The Honorable Henry "Hank" Wilkins, IV State Senator 717 W. 2d Avenue Pine Bluff, AR 71601
Dear Senator Wilkins:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 Convicted non-violent offenders sentenced to pay only a fine in the local District Courts are allowed to "work off" the fine by performing community service. Heretofore, this has been work assigned and supervised by municipal or other public agencies, or not-for-profit agencies.
 The District Court is interested in launching a pilot program in cooperation with local businesses and industry wherein these offenders may elect, voluntarily, to participate in a training/education program in which the offender is placed with a private business and performs administrative, clerical or related duties assigned by that business, the objective being to provide the offender this limited training/education in useful skills to increase his or her employability. Offenders who elect to participate in the pilot program would have the hours or days spent in the program credited toward retiring the offender's fine in exactly the same manner as if the offender had elected to perform traditional public service work. No penalty would attach to any offender who elected not to participate in the program. The businesses participating would not receive any funds from the Court or pay the offenders any compensation.
Against this background, you have posed the following question:
 Is the program as described consistent with Section 5 of Article 12 of the Arkansas Constitution, A.C.A. Section 5-4-322 (as recently amended by Act 1765), and other relevant provision[s] of Arkansas law regarding disposition of criminal offenders?
RESPONSE
In my opinion, assuming the proposed program would indeed benefit the probationer and, by extension, society, the program would probably not offend the provisions of Ark. Const. art. 12, § 5. However, given the constraints on conditioning probation set forth at A.C.A. § 5-4-303, I do not believe a district court could impose a program that simply assigned probationers, in lieu of paying a fine, to work without court monitoring performing undesignated, possibly non-educational tasks for the benefit of private businesses.
With respect to the constitutional question, your request raises issues closely similar to those addressed by one of my predecessors in the enclosed Ark. Op. Att'y Gen. No. 95-165, which considered whether a city might pay at-risk youth to participate in on-the-job training at private businesses or, in the alternative, contract with private businesses to provide such training. The proposal at issue in Opinion 95-165 involved the direct expenditure of tax revenues on a program involving private businesses, whereas the proposal at issue in your request would involve only the denial to the county or municipality of certain fine revenues in order to pursue a program that would have the effect of benefiting private businesses.[1] However, insofar as both programs would in effect involve a diversion of public funds in a manner that benefited private businesses, albeit perhaps only incidentally, I believe the two situations are strongly analogous.
In considering the application of Ark. Const. art. 12, § 5, my predecessor offered the following analysis, with which I fully concur:
 . . . Arkansas Constitution, art. 12, § 5 does not stand as an impediment to the program you describe. That section of our constitution provides:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
 In my opinion this provision is not implicated by the fact that the City of Pine Bluff would, under the program, be providing private employers with employees who are compensated by the City. The provision above prohibits the obtaining or appropriating of money to the various entities listed. It has been held that this provision does not prohibit the conveying of "in-kind consideration." See City of Fort Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976) (holding that the constructing of a driveway by a city on private property in lieu of paying the owner cash for an easement was not prohibited). In addition, although there may be a fact question in this regard, presumably the listed entities would be providing some consideration in the way of training to these city employees.
 It is also my opinion that this constitutional provision would not be violated by the City appropriating money, in the form of salary, to the "youth clientele" of the City. The youths would, as you indicate, be "employees" of the City, and it has been held generally that persons participating in public job training programs are not the recipients of a "gift" from the government, but are rather paid in order to accomplish a larger public purpose. See Martinez v. Socoma Companies, 11 Cal. 3rd 394, 521 P.2d 841, 113 Cal. Rptr. 585 (1974). It is my opinion therefore, that art. 12, § 5 does not stand as an impediment to the program you suggest with regard to any of the listed entities.
(Footnote omitted.)
As you summarize the proposed program, its purpose would be to provide each participant with "limited training/education in useful skills to increase his or her employability." In my opinion, providing private businesses with free employees who are forgiven their fines, thereby realizing the larger public benefit of training and rehabilitating offenders, is analytically indistinguishable from paying at-risk youth to undertake job training in private businesses. Accordingly, assuming the program indeed taught "useful skills," I do not believe it would offend Ark. Const. art. 12, § 5.
However, the question remains whether a district court would be statutorily authorized to initiate the proposed program as a condition of probation.[2] Section 5-4-322 of the Arkansas Code, as amended byAct 1765 of 2003, provides in pertinent part:
 (a) A district court, city court, or police court may place a person on probation or sentence him or her to public service work, and, as a condition of its order, may require the defendant to pay a fine in one (1) or several sums, and in addition may require the person to pay a probation fee or pay a public service work supervisory fee in an amount to be established by the court.
* * *
 (c) This section is supplemental to all other laws allowing a municipal court, district court, city court, or police court to attach conditions on an order of probation.
* * *
 (e) If a fine is an authorized sentence, the fine may be suspended and probation and probation fees may be ordered in lieu of the fine.
Subsection (a) of this statute deals exclusively with the courts' alternatives in placing a defendant on probation or sentencing him to public service work. It does not address the situation in which the court only imposes a fine. However, subsection (e) of the statute expressly authorizes the court to suspend imposition of a fine and instead place the defendant on probation.
Subsection (e) of this statute would appear to authorize what you describe as the present practice of "working off" fines through community service of some sort. See Ark. Op. Att'y Gen. No. 2002-319 (addressing the employment status of an individual sentenced to perform community service for an incorporated town in lieu of paying a fine). At issue is whether a district court, instead of ordering such publicly supervised community service in lieu of a fine, might exercise its discretion by imposing as a condition of probation a term of unpaid service in a private business.
Section 5-4-303 of the Code, as amended by Act 1765 of 2003, provides in pertinent part:
 (a) If the court suspends imposition of sentence on a defendant or places him on probation, it shall attach such conditions as are reasonably necessary to assist the defendant in leading a law-abiding life.
* * *
 (c) If the court suspends imposition of sentence on a defendant or places him on probation, as a condition of its order, it may require that the defendant:
* * *
(2) Work faithfully at suitable employment;
 (3) Pursue a prescribed secular course of study or vocational training designed to equip him for suitable employment;
* * *
 (5) Participate in a community-based rehabilitative program or work-release program which meets the minimum state standards for certification and for which the court may impose reasonable fees or assessments on the defendant to be used in support of said programs;
* * *
 (10) Satisfy any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty or incompatible with his freedom of conscience.
The Arkansas Supreme Court has offered the following observations regarding what conditions might be characterized as "reasonably necessary to assist the defendant in leading a law-abiding life:
 Ark. Stat. Ann. 41-1203 [now A.C.A. § 5-4-303], conditions of suspension or probation, states in part that the court" shall attach such conditions as are reasonably necessary to assist the defendant in leading a law-abiding life." The statute lists some of the possible conditions the court may attach, including that a defendant be required to "refrain from frequenting unlawful or designated places or consorting with designated persons," and "any other conditions reasonably related to the rehabilitation of the defendant and not unduly restrictive of his liberty. . . ."
 The broad objectives sought by probation are education and rehabilitation, and the conditions of probation and suspension should promote those objectives. It is generally held that conditions for probation will be upheld if they bear a reasonable relationship to the crime committed or to future criminality. 21 Am.Jur.2d 570.
Young v. State, 286 Ark. 413, 417-18, 692 S.W.2d 752 (1985).
Logic clearly suggests that "education and rehabilitation" will "bear a reasonable relationship to . . . future criminality" and be "reasonably necessary to assist the defendant in leading a law-abiding life." However, I am unable to determine from your brief summary how much "education and rehabilitation" the proposed program would entail. In this regard, I am struck by the fact that A.C.A. § 5-4-303(c) appears to envision conditioning probation on vocational or on-the-job training only if the training is closely monitored by some governmental authority. Moreover, the "prescribed secular course of study or vocational training designed to equip [a probationer] for suitable employment" appears to be far more formal and goal-oriented than would be a program that simply allows participating businesses to open their doors to unpaid employees whose assignments may not invest them with truly marketable skills.
Being unaware of how much, if any, supervision and selection of work assignments the district court anticipates would apply, I cannot opine definitively that a program of the sort you describe would be impermissible. I will note, however, that legislative action taken after the court's pronouncement in Young strongly suggests that the legislature intended the "reasonably necessary" standard to serve as a significant restraint on judicial discretion in conditioning probation. Before 1991, A.C.A. § 16-93-401 authorized any circuit court to order probation "upon such terms and conditions as the court deems best" — a standard considerably broader than that set forth at A.C.A. § 5-4-303(a). The legislature repealed this statute by Act 586 of 1991, noting that it was "in conflict with statutes contained in the Arkansas Criminal Code" and that as a result "great confusion exists as to the applicability of provisions governing the disposition of offenders, hamper[ing] courts in the effective and proper disposition of offenders." In my opinion, this history suggests that the legislature intended the "reasonably necessary" standard to be relatively narrowly construed.
I can and will opine that adopting a program that would assign probationers to unmonitored, unpaid stints of work for private employers would run afoul of A.C.A. § 5-4-303. I do not read the current law as affording a district court unfettered discretion to benefit any private business that agrees to employ free labor. Assuming the program were structured to afford guidance and control of the sort applied in the programs referenced in A.C.A. § 5-4-303(c), the program might pass muster under current law. However, as my use of the conditional "might" should suggest, legislative clarification on this point appears warranted.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosure
[1] Section 16-17-707 of the Code, as amended by Acts 1185 and 1765 of 2003, provides for the payment of fines into either the city treasury or the county treasury, depending on where the offense occurred and what law enforcement agency effected the arrest.
[2] Although it does not bear directly on my ensuing analysis, I will note that my predecessor opined that in enacting the ordinance at issue in Opinion 95-165, the city council exceeded its statutory police power.